UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re: | ) | Case No. 10-50091 |
| | ) | |
| Harold E. Cole, | ) | Chapter 11 |
| | ) | |
| Debtor | ) | October 1, 2013 |

**FIFTH AMENDED PLAN OF REORGANIZATION**

Harold E. Cole ("Debtor"), proposes the following Plan of Reorganization ("Plan"), to his creditors pursuant to §1121(a) of Chapter 11 of the Bankruptcy Code (11 U.S.C. §101 et. seq.) (the "Bankruptcy Code").

**ARTICLE ONE
DEFINITIONS**

**1.**  **Code:**  Code shall mean the Bankruptcy Reform Act of 1978 which has been codified as Title 11 of the United States Code.

**2.**  **Confirmation:**  Confirmation shall mean the date on which this Plan is confirmed by Order of the Court.

**3.**  **Court:**  Court shall mean the United States Bankruptcy Court for the District of Connecticut including the United States Bankruptcy Judge presiding therein.

**4.**  **Effective Date of the Plan:**  Effective Date of the Plan shall mean the first business day following the last day on which an appeal from an Order of the Court confirming this Plan may be taken under applicable law and no such appeal has been taken or if such an appeal has been taken, the first business day following the date upon which such appeal has been exhausted and the Plan may Proceed.

**5.**  **Date of Confirmation of the Plan:**  Date of Confirmation of the Plan shall mean that date upon which the Court approves the Debtor's plan.

**6.**  **Net proceeds** from the sale or refinance of real estate shall be defined as the balance left over after payment in full of any encumbrances on said realty, a reasonable attorney's fee for the closing, closing costs and adjustments standard to the practice of the town where the property is located, payment of any capital gains taxes due on the sale and payment for any allowed administration expenses in this case.

# ARTICLE TWO
## CLASSIFICATION OF CLAIMS AND INTERESTS

A. **Administrative** as defined in Section 503(b) of the Code include the claims of the Debtor's bankruptcy counsel, Zeldes, Needle & Cooper, P.C., whose total is estimated to be less than $50,000 and accounting fees which total is estimated to be $10,000. Court approval of the allowance of all of the above claims is required. These claims will be paid in full on the later of their allowance or confirmation of the plan. Any entity herein may elect to receive payment over a period of time or a different treatment.

B. **Secured Claims.**

   1. **Class 1 – PHH Mortgage Corporation**

   Class 1 consists of PHH Mortgage Corporation for an alleged mortgage on 27 Middle Quarter Road, Woodbury, Connecticut in the approximate amount of $272,000.

   2. **Class 2 - Lovetere**

   Class 2 consists of the estate of Nancy Lovetere and John A. Lovetere for alleged judgment liens on 27 Middle Quarter Road, Woodbury, Connecticut, Main Street North, Woodbury, Connecticut (56.29 acres), Main Street North, Woodbury, Connecticut (2.327 acres), 35 Joshua Hill Road, Woodbury, Connecticut (9.871 acres), Joshua Hill Road and Bacon Pond Road, Woodbury, Connecticut (Parcel B at intersection - 5 acres).

   3. **Class 3 – Jungen Mortgage**

   Class 3 consists of Mark Jungen for an alleged mortgage of $12,500 on the 5.37 acre parcel on Main Street North, Woodbury, Connecticut. This mortgage may have been resolved and no longer be valid.

   4. **Class 4 – Donald E. Cole and Joan Mae Cole**

   Class 4 consists of Donald E. Cole and Joan Mae Cole for an alleged first mortgage in the amount of $100,000 on the 5 acre parcel on Joshua Hill Road and Bacon Pond Road, Woodbury, Connecticut.

   5. **Class 5 – Stauble/Lorraine**

   Class 5 consists of Pat Stauble and Donna Lee Hamilton Lorrain for a first mortgage of approximately $185,000 property located on the corner of Summer and Main Streets, Wiscasset, Maine.

6. **Class 6 – Town of Woodbury**

Class 6 consists of the claim for real estate taxes owed to the Town of Woodbury against 565 Main Street North, Woodbury, Connecticut in the approximate amount of $60,382.02.

7. **Class 7 – Town of Woodbury**

Class 7 consists of the claim for real estate taxes owed to the Town of Woodbury against 735 Main Street North, Woodbury, Connecticut in the approximate amount of $24,261.93.

8. **Class 8 – Town of Woodbury**

Class 8 consists of the claim for real estate taxes owed to the Town of Woodbury against 531 Main Street North, Woodbury, Connecticut in the approximate amount of $18,963.92.

9. **Class 9 – Town of Woodbury**

Class 9 consists of the claim for real estate taxes owed to the Town of Woodbury against 535 Main Street North, Woodbury, Connecticut in the approximate amount of $22,297.00.

10. **Class 10 – Town of Woodbury**

Class 10 consists of the claim for real estate taxes owed to the Town of Woodbury against 35 Joshua Hill Road in the approximate amount of $34,182.50.

11. **Class 11 – Town of Woodbury**

Class 11 consists of the claim for real estate taxes owed to the Town of Woodbury against Bacon Pond Road Property in the approximate amount of $28,182.73.

C. **Priority Claims - Priority Claims under 507(a)(8)**

These are the claims for income taxes by the Internal Revenue Service and the State of Connecticut, Department of Revenue Services as well as any real estate taxes due any municipality in which the Debtor owns real property.

D. **Priority Claims**

1. **Priority Claims under 507(a)(8)**

All allowed priority tax claims, along with the appropriate rate of interest under applicable non-bankruptcy law, will be paid in full within five (5) years of the date of filing of this Chapter 11 case. For the period commencing on the effective date and continuing through December 15, 2014, the Internal Revenue Service and the Connecticut Department of Revenue Services shall each receive monthly payments in the amount of $500 from the Debtor's projected income for that period. The balance of priority tax claims remaining due as of January 15, 2015, including accrued interest under applicable non-bankruptcy law, shall be paid in full in one lump sum payment no later than January 15, 2015, which is the five (5) year anniversary of the petition date.

Upon the Debtor's failure to make any payment due on a priority tax claim or a general unsecured tax claim that is not cured within thirty (30) days of the mailing of a written notice of default, the DRS may exercise all rights and remedies available, under non-bankruptcy law for the collection of its entire claim or seek appropriate relief from this Court.

The Internal Revenue Services' administrative claim for post-petition taxes shall be paid to the Internal Revenue Service within thirty (30) days of confirmation.

2. **Priority Claims under 507(a)(4)**

This is the disputed claim of Susan Balutis for an alleged wage claim.

3. **Unsecured Claims - Class 12**

Class 14 consists of general unsecured claims including the disputed claim of Roger and Mary Ellen Simon in the total approximate amount of $677,000.

4. **Claim of Equity Holder - Class 13**

Harold E. Cole is the sole owner of the assets set forth in his schedules.

## ARTICLE THREE
## TREATMENT OF CLASSES AND INTERESTS NOT IMPAIRED UNDER THE PLAN

A. **Administrative Claims.**

Administrative claims shall be paid in full upon the Effective Date of this Plan or as otherwise provided herein or upon allowance by the court, whichever is later. Any entity herein may elect to receive payment over a period of time or a different treatment.

The Debtor has currently not filed his 2012 post-petition State of Connecticut income tax return but has filed his sales and use tax return. The Debtor shall file

4

his Connecticut income tax returns and pay any and all amounts due and outstanding in a timely fashion. Said claims of the State of Connecticut for these income taxes are an administrative expense.

    **B.**    **Owner of the Equity - Class 13**

The Debtor will continue to own his equity in the assets of the estate. Upon confirmation, all property shall revest in the Debtor subject to the liens of record and the terms and conditions of the Plan.

    **C.**    All moneys due the U. S. Trustee pursuant to 28 USC 1930 will be paid on the Effective Date of the Plan and payments will continue until the entry of a final decree.

## ARTICLE FOUR
## TREATMENT OF CLASSES AND INTERESTS IMPAIRED UNDER THE PLAN

    **A.**    **Secured Claims**

        **1.**    **Secured Claim - Class 1 – PHH Mortgage Corporation**

As to Class 1 the Debtor will pay the allowed secured claim in full over the remaining term of the loan in accordance with its terms. Until paid this creditor shall retain its liens. This loan is unimpaired.

        **2.**    **Secured Claim - Class 2 - Lovetere**

As to Class 2 the Debtor will pay the allowed secured claim including arrears if any within 3 years of the Effective Date of Confirmation in equal yearly installments with interest fixed at the rate required by Connecticut law. Until paid this creditor shall retain their liens. This loan is impaired.

        **3.**    **Secured Claim - Class 3 - Jungen**

As to Class 3 the Debtor will pay the allowed secured claim including arrears if any within 3 years of the Effective Date of Confirmation in equal yearly installments with interest fixed at the rate required by Connecticut law. Until paid this creditor shall retain their liens. This loan is disputed by the Debtor and was likely paid. This loan is impaired.

        **4.**    **Secured Claim - Class 4 - Donald E. Cole and Joan Mae Cole**

As to Class 4 the Debtor will pay the allowed secured claim including arrears if any within 3 years of the Effective Date of Confirmation in equal yearly installments with interest fixed at the rate required by Connecticut law. Until paid this creditor shall retain their liens. This loan is impaired.

5. **Secured Claim - Class 5 – Stauble/Lorraine**

As to Class 5 the Debtor will pay the allowed secured claim including arrears in full in accordance with the stipulation entered into with the mortgage holder. Until paid this creditor shall retain its liens. This loan is impaired.

6. **Secured Claim – Class 6 – Town of Woodbury**

As to Class 6 the Debtor will pay the allowed secured claim including arrears if any within 3 years of the Effective Date of Confirmation in equal yearly installments with interest fixed at the rate required by Connecticut law. Until paid this creditor shall retain their liens. This claim is impaired.

7. **Secured Claim – Class 7 – Town of Woodbury**

As to Class 7 the Debtor will pay the allowed secured claim including arrears if any within 3 years of the Effective Date of Confirmation in equal yearly installments with interest fixed at the rate required by Connecticut law. Until paid this creditor shall retain their liens. This claim is impaired.

8. **Secured Claim – Class 8 – Town of Woodbury**

As to Class 8 the Debtor will pay the allowed secured claim including arrears if any within 3 years of the Effective Date of Confirmation in equal yearly installments with interest fixed at the rate required by Connecticut law. Until paid this creditor shall retain their liens. This claim is impaired.

9. **Secured Claim – Class 9 – Town of Woodbury**

As to Class 9 the Debtor will pay the allowed secured claim including arrears if any within 3 years of the Effective Date of Confirmation in equal yearly installments with interest fixed at the rate required by Connecticut law. Until paid this creditor shall retain their liens. This claim is impaired.

10. **Secured Claim – Class 10 – Town of Woodbury**

As to Class 10 the Debtor will pay the allowed secured claim including arrears if any within 3 years of the Effective Date of Confirmation in equal yearly installments with interest fixed at the rate required by Connecticut law. Until paid this creditor shall retain their liens. This loan is impaired.

11. **Secured Claim – Class 11 – Town of Woodbury**

As to Class 11 the Debtor will pay the allowed secured claim including arrears if any within 3 years of the Effective Date of Confirmation in equal yearly installments with interest

Case 10-50091    Doc 381    Filed 10/03/13    Entered 10/03/13 09:11:16    Page 7 of 13

fixed at the rate required by Connecticut law. Until paid this creditor shall retain their liens. This claim is impaired.

**8.    Priority Claims**

All allowed priority tax claims, along with the appropriate rate of interest under applicable non-bankruptcy law, will be paid in full within five (5) years of the date of filing of this Chapter 11 case. For the period commencing on the effective date and continuing through December 15, 2014, the Internal Revenue Service and the Connecticut Department of Revenue Services shall each receive monthly payments in the amount of $500 from the Debtor's projected income for that period. The balance of priority tax claims remaining due as of January 15, 2015, including accrued interest under applicable non-bankruptcy law, shall be paid in full in one lump sum payment no later than January 15, 2015, which is the five (5) year anniversary of the petition date.

Upon the Debtor's failure to make any payment due on a priority tax claim or a general unsecured tax claim that is not cured within thirty (30) days of the mailing of a written notice of default, the DRS may exercise all rights and remedies available, under non-bankruptcy law for the collection of its entire claim or seek appropriate relief from this Court.

The Internal Revenue Services' administrative claim for post-petition taxes shall be paid to the Internal Revenue Service within thirty (30) days of confirmation.

**9.    Unsecured Claims - Class 12**

As to Class 12, the Debtor will pay all allowed unsecured claims in full within 3 years of Effective Date of Confirmation in equal yearly installments. Payments shall be made yearly in arrears commencing with the payment in one year from the effective date of the Plan. The creditors shall receive interest at the United States District Court judgment rate which is fixed on the effective date.

**13.    Claim Equity Holder – Class 13**

Harold E. Cole shall retain all equity.

## ARTICLE FIVE
## EXECUTORY CONTRACTS

All executory contracts not specifically rejected in the Plan or objected to prior to confirmation shall be assumed by the confirmation of the Plan.

7

## ARTICLE SIX
## MEANS FOR THE EXECUTION OF THE PLAN

A. **Means for Effectuation of the Plan:** To the extent that the Debtor either seeks to sell or refinance any of the properties treated in this Disclosure Statement and Plan after confirmation, or generally makes a request to any creditor secured on such property such creditor shall deliver a statement of the amount due as modified by confirmation of this plan. Such statement shall not be unreasonably withheld.

Each secured creditor treated by the plan shall apply the payments under the plan according to the interest rate as stated herein or as previously or finally determined by Court order or confirmation of the Debtor's plan. The Debtor may supplement any payments from the cash flow as hereinafter described. Any statements normally sent to the Debtor prepetition shall be continued to be sent to the Debtor post confirmation as adjusted by virtue of confirmation of the Debtor's plan. In addition, each secured creditor treated in the plan shall continue to send the Debtor 1099 statements in each successive year as provided by the Internal Revenue Code.

The Debtor intends to list all of his property for sale except for his house. The Debtor will sell, develop or refinance all of these properties. As shown on the liquidation analysis affixed to the Disclosure Statement, the Debtor believes there is net equity before unsecured claimants of approximately $1,100,000. This is before valuating the value of antiques and the going concern of the antiques building supply business. The Debtor intends to sell, develop or refinance these properties and is in the process of doing so.

Unsecured creditors will thus be paid from the net proceeds as herein described from the sale, refinance or development of the real estate and it is conservatively projected that unsecured creditors will be paid in full within three years with interest at the federal judgment rate. Moreover, current operations for the antiques building supply business demonstrate that the business will produce $50,000 of excess cash flow in 2013 and $100,000 of excess cash flow in 2014. This will allow the business to keep all obligations current and contribute funds to any annual payments to secured and unsecured creditors in order to fund this plan.

Upon completion of his payments required under this Plan, the Debtor will seek an order from the Court as provided in §1141(d)(5)(A), discharging him of his debts treated in the Plan pursuant to §1141(d)(1)(A).

B. **Profit History and Projection**

Case 10-50091    Doc 381    Filed 10/03/13    Entered 10/03/13 09:11:16    Page 9 of 13

The Debtor plans to make payments to creditors from (i) the sale, refinance or development of the Bethlehem property and/or the sale, refinance or development of those properties and from cash flow of the business for which Debtor receives bona fide fair market value offers (ii) the operations of Debtor's antique business (iii) the operations of Debtor's woodworking business (iv) any post-confirmation monetary awards Debtor may realize from the Property Litigation and (v) the re-development of any real property parcels.  The Debtor reasonably expects that sufficient revenue will be generated by cash flow and the sale, refinance or development of real estate in order for the Debtor to make the required payments under the Plan and that the Plan as proposed is in the best interests of its creditors.  The attainment of the objective of providing unsecured creditors with value that is not less than what would be received in a liquidation is therefore dependent on the Debtor's future profitability.

## ARTICLE SEVEN
## GENERAL PROVISIONS

1. **Payment on Effective Date.**  No payments under this Plan will be made under the Plan to Claimants until an Order confirming this Plan has become a Final Order.

2. **Payments on Business Days.**  Whenever a distribution hereunder is required to be made on a day other than a Business Day, such distribution shall be made on the first Business Day immediately following, without interest.

3. **Objections to Claims and Motions to Subordinate Claims.**

   a. Objections to Claims shall be filed with the Bankruptcy Court by September 10, 2013 or later as allowed by the court and served upon the holder of each Claim to which the Debtor objected.  Objections previously filed shall become the subject of pre-trial scheduling orders unless resolved by compromise.

   b. Unless otherwise ordered by the Bankruptcy Court, the Debtor may litigate to judgment, settle or withdraw objections to Claims or motions to subordinate claims.

   c. Distribution with respect to and on account of Claims to which the Debtor has objected to shall be made with interest, when an Order,  judgment, decree or settlement agreement with respect to such Claim becomes a Final Order as paid under this Plan.

4. **Fractional Cents.**  Any other provision of this Plan to the contrary notwithstanding, no payments of fractions of cents will be made.  Whenever a payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding off of such fraction to the nearest whole cent (rounding down in the case of .5).

5. **Setoffs.** The Debtor may, but shall not be required to set off against any Claim, the payments to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever Debtor may have against the Claimant, but neither the failure to do so nor the allowance of a Claim hereunder shall be paid until such Disputed Claim shall become an Allowed Claim. No holder of a Disputed Claim shall be entitled to any interest on the moneys reserved with respect to such Claim.

6. **Disputed Payments.** In the event of any dispute between and among Claimants (including the Person or Persons asserting the right to receive the disputed payment) as to the right of any Person to receive or retain any payment to be made to such Person under this Plan, the Debtor shall, in lieu of making such payment to such Person, make it instead into an escrow account, for payment as ordered by a Court of competent jurisdiction or as the parties to such dispute may otherwise agree among themselves.

7. **Vesting.** After Confirmation, the property of the Estate shall be free and clear of all Claims of creditors of the Debtor, except as otherwise provided in this Plan. All property of the Estate shall become the property of the Debtor.

8. **Cash Payments.** If any Person entitled to receive a cash payment under this Plan cannot be located on or before the Effective Date of the Plan, such cash shall be set aside and held in trust in a segregated, interest-bearing account to be maintained by the Debtor. If such Person is located within one year of the Effective Date, such cash, together with any interest earned thereon held by the Debtor with respect to such payment, shall be paid or distributed to such Person. If such Person cannot be located within one year after the Effective Date, any such cash and accrued interest thereon shall become the property of the Debtor pursuant to 11 USC §347(b), **provided, however** that nothing contained in this Plan shall require the Debtor to attempt anything other than reasonable efforts to locate such person.

9. **Notices.** All notices, requests or demands in connection with this Plan shall be in writing and shall be deemed to have been given when received, or if mailed, five days after the date of mailing provided such writing shall be sent by registered or certified mail, postage prepaid, return receipt requested, and if sent to the Debtor addressed to:

> Maximino Medina, Jr., Esq.
> James G. Verrillo, Esq.
> Zeldes, Needle & Cooper, P.C.

       P.O. Box 1740  
       1000 Lafayette Blvd.  
       Bridgeport, CT. 06601-1740  
       Tel:  (203)332-5733  
       Fax: (203)333-1489  
       Email: mmedina@znclaw.com  
       Email: jverrillo@znclaw.com  

**10.    Headings.**  The headings used in this Plan are inserted for convenience only and neither constitutes a portion of this Plan nor in any manner effect the provisions of this Plan.

**11.    Severability.**  Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or effect the enforceability and operative effect of any and all other provisions of this Plan.

**12.    Governing Law.**  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with, the internal laws of the State of Connecticut.

**13.    Successors and Assigns.**  The rights and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of the successors and assigns of such Person.

**14.    Effect of Payment of Secured Debt.**  To the extent the Plan provides for payment(s) is satisfaction of any allowed secured claim, secured by mortgage or security or possessory interest and such payments is/are made in full consummation of the Plan, said claimant, at the request of the Debtor, shall execute any documents or perform any reasonable act to release or assign said mortgage or security or possessory interest pursuant to the terms of the plan.

**15.    Professional Payments.**  The Debtor shall be allowed to make all payments to professionals including brokers, attorneys and accountants post-confirmation without further order and authorization from the Court.

**ARTICLE EIGHT**  
**RETENTION OF JURISDICTION BY THE COURT**

Case 10-50091    Doc 377    Filed 10/03/13    Entered 10/03/13 16:01:26    Desc Main
Document 13 Page 12 of 13

The Court will retain jurisdiction until payments under this Plan have been fully made, notwithstanding substantial consummation of the plan, including but not limited to the following purposes:

    a)    The classification of the claim of any creditor and the re-examination of claims which have been allowed for purposes of voting, and the determination of such objects as may be filed for creditors' claims.  The failure by the Debtor to object to any claim before confirmation shall not be a waiver of the Debtor's right to object to or re-examine the claim in whole or in part.

    b)    The determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of confirmation, between the debtor and any other party including, but not limited to, any right of the Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code.

    c)    The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

    d)    The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

    e)    The enforcement and interpretation of the terms and conditions of this Plan.

    f)    The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

    g)    The entry of an order concluding and terminating this cause, subject only to retention of jurisdiction to enter a discharge order meeting the requirements of §1141(d)(5)(A).

**ARTICLE NINE**
**MODIFICATION OF THE PLAN**

The Debtor may propose amendments or modifications of this Plan after confirmation, notwithstanding the fact that the Plan may be substantially consummated.  The Debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of this Plan.

# ARTICLE TEN
## QUARTERLY FEES

In accordance with §1129(a)(12) of the Bankruptcy Code and 28 U.S.C. §1930, all quarterly fees payable to the United States Trustee shall be paid by the Debtor in full on or before their respective due dates and shall continue to be assessed and paid until such time as a final decree is entered by the Court or the Court enters an order converting or dismissing this case.  The Debtor shall also timely file monthly operating reports every month until such time as a final decree is entered by the Court or the Court enters an order converting or dismissing this case.

        THE DEBTOR

        _____//s//_____
        Harold E. Cole

By:_____//s//_____
    Maximino Medina, Jr. CT 06018

    Zeldes, Needle & Cooper, P.C.
    P.O. Box 1740
    1000 Lafayette Blvd.
    Bridgeport, CT. 06601-1740
    Tel: (203)332-5733
    Fax: (203)333-1489
    Email: mmedina@znclaw.com