UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

FILED
2019 AUG 22 P 2:30
CLERK, U.S. BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| HAROLD E. COLE ) | CASE NO: 10-50091 (JAM) |
|       Debtor ) | |
| ) | AUGUST 22, 2019 |

## DEBTOR'S RESPONSE AND PARTIAL OBJECTION TO TRUSTEE'S MOTION FOR AUTHORITY TO SELL PERSONAL COLLECTION OF ANTIQUES AND REMAINING PERSONAL PROPERTY OF DEBTOR AT PUBLIC AUCTION

Debtor Harold E. Cole ("Debtor") hereby responds and objects, in part, to the Trustee's AUGUST 8, 2019 Motion for Authority to Sell Personal Collection of Antiques and Remaining Personal Property of Debtor at Public Auction (the "Motion") and respectfully submits:

1. Debtor understands that additional sales of remaining assets are necessary and is fully prepared to cooperate with the Trustee and her agents to effectuate necessary sales because no one is more desirous of seeing this case closed than the Debtor.

2. However, Debtor's first objection to the Application is that any necessary sales may not include Debtor's exempt assets as provided for under 52-352(b) and that Debtor's home furnishings are synonymous with his personal collection and as such should not be offered for sale until all other assets of the bankruptcy estate are liquidated.

3. Debtor wishes the Court to know that he disagrees with the accuracy of certain individual statements contained in Trustee's Application. Debtor respectfully submits that:

1

a. Trustee's representation that the Hamilton Group, LLC is an auctioneer competent to sell the assets of the Debtor fails to acknowledge that prior to their employment for the first sale, it appears that the Hamilton Group:
1. had little to no experience with Early American Antiques
2. had not run an online auction in four years
3. had only run one online bankruptcy sale
4. had not yet used the Invaluable platform they chose for the sale
5. had little experience with catalog sales
6. made material misrepresentation in asset descriptions
7. made material misrepresentation in their market value appraisal
8. used photos which were unprofessional and taken on a wrinkled sheet
9. produced description throughout their auction listing with no spacing between the words

b. Trustee's representation that the Hamilton Group, LLC is an auctioneer competent to sell the assets of the Debtor fails to acknowledge that before, during and after the employment of the Hamilton Group for the first sale Debtor:
1. provided 19 specific examples of items improperly appraised by the Hamilton Group as documented by two independent appraisers
2. provided a specific example of the Hamilton Group's failure to properly identify information critical to proper appraisal
3. provided a specific example, using the Hamilton Groups definition of Sales or market value approach to valuation as set forth in their appraisal, to shown irrefutably that they had appraised an item for $200 with a market value as show by actual recent sales of $4,035
4. provided a specific example of a description which grossly misrepresented an asset and its age and provided corroboration by an active antiques dealer and appraiser with prior auction experience.
5. repeatedly offered to review additional examples with the Trustee

6. provided an affidavit to the above and additional issues dated December 6, 2016 for which he has received no response.

c. Trustee's representation that Debtor has provided "opposition" has failed to document in what way debtor has done so and Debtor represents that options offered to the Trustee based on his 50+ years in the Early American Antiques Market to allow his assets to bring highest and best value were characterized as opposition. These options included but were not limited to bringing forth an auctioneer, who was running on average ten sales per year in the three years prior and who estimated Debtors inventory would bring $600,000 to $800,000 in his sales, to liquidate his antiques inventory prior to the Trustee's request these assets be sold. Debtor brought in an offer from Julia's (one of the top auction houses for Early American in the country) to advance the Hamilton Group's appraised value and turn any proceeds in excess of this amount after their fees to the Trustee. Debtor arranged for the Hamilton Group to use a facility otherwise blocked to vendors during the well-known "Antiques Week" in New Hampshire—a prime location at a prime date and agreed to deliver the Maine antiques to the location.

d. That the Trustees representation that a "full catalogue and photographs will be made in preparation for the auction," fails to disclose that, the catalog produced by the Hamilton Group for the prior sale, failed to meet industry standard as more fully documented below and that a representative of the Hamilton Group has communicated to Debtor's representative, the they do not intend to provide value estimates for the upcoming sale, an American Antiques industry standard in auction catalogs.

e. That the Ramase assets should not be brought to sale at all until someone with knowledge of antique building materials assesses their condition. Because of the Trustee's failure to preserve these asset, they may have deteriorated to the degree that cost to bring them to sale may exceed the amount they will bring at auction and result in a net negative to his bankruptcy estate. Given that the Hamilton Group previously testified in the bankruptcy court, that they did not have knowledge of antique building materials they should not be employed to make this assessment.

3

f. That Debtor is concerned about the estimate of $100,000 to $250,000 being used in the Trustee's motion when no appraisal has been performed and when Debtor's Power of Attorney asked for the basis was told the Hamilton Group had not broken it down. When Debtor's Power of Attorney asked if they would provide a rough estimate by just three categories—decoys, Ramase assets and personal collection—they were unwilling or unable to provide it.

g. The "accepted payment forms" proposed by the Hamilton Group could be catastrophic to the sale as they will eliminate a huge percent of the online buying market. They blatantly ignore industry standard. They show a complete lack of understanding/experience by the Hamilton Group of the guarantees provided by Live Auctioneer's when customers pay by credit card through Live Auctioneer's front end.

h. The 15% buyer's premium claimed for the auctioneer in lieu of commission is presented as a, "great benefit" to the bankruptcy estate when the traditional commission in a bankruptcy sale, which this gallery has previously accepted, has a maximum of 10% with a declining percentage after certain dollar thresholds are reached. The proposed compensation would be a greater *cost* to the estate and therefore should not be presented as a "great benefit".

i. The "fees" estimated at $27,350 do not include an estimate of the 5% Live Auctioneer's fees which on a $250,000 sale would be an additional $12,500. When combined with the disclosed fees and advertising budget of $9,500, Hamilton Group's cost to bring the assets to sale is actually approximately $49,350. There are other more experienced galleries who can bring Debtors assets to sale at a lesser cost. Skinner's for example, keeps the buyer's premium then charges a flat rate of 7% plus 1.5% insurance as quoted directly by the gallery to the Trustee previously. The total charge for a $250,000 sale would be $21,250, a saving to the bankruptcy estate of $28,100 and would include their expertise, their full color catalog and their invaluable mailing list/following. The Trustee has previously objected to the use of Skinners because they want to pick only specific assets. If Skinner's were allowed to pick what they feel would bring $250,000 at their gallery, it would take less of my father's collection and save the

4

bankruptcy estate over $28,000 versus the Hamilton Group with substantially less expertise, a dramatically less professional catalog, no mailing list/following for Early American Antiques.

4. Debtor objects to motion for relief from the stay imposed under 11 U.S.C. Section 6004(g), so that the sale may take place within ten days of the time this Court grants this motion as it would not be possible to properly photograph and catalog the assets, meet advertise deadlines to assure reasonable public notice and allow for reasonable opportunity for inspection prior to the running of the sale.

5. Debtor submits and requests an evidentiary hearing be scheduled so that the assertations above can be documented to the court so alternate actions can be taken which will ensure Debtor's assets have the opportunity to bring highest and best value.

For one or all of the foregoing reasons, the Debtor asks this Court not to grant the Trustee's Motion at this time.

THE DEBTOR
HAROLD E. COLE

By: _____
Margaret Heminway
As Power of Attorney