# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| HAROLD E. COLE ) | CASE NO. 10-50091(JAM) |
|       Debtor ) | |
| ) | AUGUST 31, 2020 |

### TRUSTEE'S OBJECTION TO DEBTOR'S SECOND AMENDED MOTION TO REMOVE CHAPTER 7 BANKRUPTCY TRUSTEE

TO THE HONORABLE JULIE A. MANNING, United States Chief Bankruptcy Judge:

Now comes Kara S. Rescia, duly appointed Chapter 7 Trustee of the above-captioned bankruptcy estate (the "Trustee"), and hereby objects to the Second Amended Motion to Remove Chapter 7 Trustee filed on August 10, 2020 (the "Motion") and in support thereof hereby represents as follows:

1. On January 15, 2010, the Debtor, Harold E. Cole, filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

2. During his Chapter 11 case, the Debtor operated antiques and woodworking businesses. The Debtor failed to timely file monthly operating reports. On June 14, 2010, the United States Trustee filed a motion to compel the Debtor to file said operating reports (Doc. Id. 66), which the Court granted on July 14, 2010 (Doc. Id. 71).

3. On October 2, 2013, the Debtor confirmed his Fifth Amended Plan (the "Plan") (Doc. Id. 379). The Debtor failed to make payments pursuant to his Plan. On November 11, 2014, a creditor filed a motion to dismiss or convert the case for failure to make plan payments (Doc. Id. 469).

4. On February 5, 2015, after several months of continuances to allow the Debtor the opportunity to cure and over the Debtor's opposition, the case was converted to Chapter 7 (Doc. Id. 494) and Kara S. Rescia was duly appointed the Chapter 7 Trustee and is currently serving in that capacity.

5. Since conversion, the Trustee filed a motion to compel the Debtor to cooperate with the administration of the Estate (Doc. Id. 882), as well as a motion to show cause why the Debtor and his authorized agents should not be held in contempt (Doc. Id. 1002) (the "Motion to Show Cause") for failure to comply with the Orders entered by this Court compelling the Debtor and his authorized agents to cooperate with the administration of the Estate (Doc. Ids. 949 and 986). The Motion to Show Cause more fully details how the Debtor and his authorized agents have frustrated Estate administration since conversion.

6. Recently, on July 30, 2020, the Trustee filed a second motion to compel the Debtor to cooperate with the administration of the Estate after the Debtor, days before scheduled site visits to his Maine and Connecticut asset locations to select assets for a third and final sale, filed the initial Motion to Remove Chapter 7 Bankruptcy Trustee (Doc. Id. 1072) and Motion for Specific Accounting from Bankruptcy Trustee (Doc. Id. 1073) and informed the Trustee through counsel that the Debtor wished to reschedule the site visits to the Maine and Connecticut asset locations until after these two motions were resolved.

7. The Motion is substantially similar to the Application to Remove Trustee filed approximately one year ago on July 29, 2019 (Doc. Id. 933) by Margaret Heminway, the Debtor's daughter and Power-of-Attorney, which was improperly filed while there was an attorney of record for the Debtor and hence the Court issued a Deficiency Notice on July 30, 2019 (Doc. Id. 936) which went uncured. At a hearing held on August 6, 2019, the Court informed Ms. Heminway that the Debtor does not have standing to prevent the Trustee from administering the Estate and that no evidence has been put before the Court to support removal of the Trustee (Doc. Id. 963, 1:11:32–1:12:11). In a hearing held August 27, 2019, the Court also informed Ms. Heminway that the Trustee has done her due diligence in this case and there has been no appeal of an order entered by the Court, making all orders final and binding (Doc. Id. 984, 41:14–

41:56). The majority of the allegations raised by the Debtor in the Motion have been addressed by this Court in these two hearings as they have been repeatedly raised throughout this case.

### Allegations Contained in Paragraph 1

8. The allegations contained in Paragraph 1 of the Motion are unfounded. It is unclear to what exactly the Debtor is referring. However, it is possible that the $1,000.00 he alleges the "Trustee took possession of" may be a voluntary payment made by the Debtor to the Trustee on May 16, 2016 toward his nonexempt equity in his 100% membership interest in the LLC known as Ramase ("Ramase") at a time when the Debtor was still operating that business, which the Trustee deposited into the bankruptcy estate account and said payment was credited toward the nonexempt equity in Ramase. Debtor's former counsel was fully aware of this payment at that time. It is possible that the Debtor made that payment from his social security benefits, which may be why the Debtor describes it as exempt, but no claim of exemption was ever made as to that payment or as to the Debtor's interest in Ramase. The only bank account closed by the Trustee in this case was the Debtor-in-Possession account which the Trustee is required to liquidate and close upon conversion.

### Allegations Contained in Paragraphs 2 Through 4

9. The allegations contained in Paragraphs 2 through 4 of the Motion relate to matters which are subject to final Orders of this Court (Doc. Ids. 670 and 680). The docket of this case very clearly shows through the history of pleadings and hearings held before the Court that the Debtor is patently incorrect about the marketing and sale of the 35 Joshua Hill Road, Woodbury, CT property (the "Property"). On July 13, 2015, the Court granted the application to appoint realtor, Keller Williams Greater Hartford (Doc. Id. 535), and Ed Sutton, the real estate agent thereof, provided both to the Court and to the Debtor through counsel multiple times all of his marketing efforts and the matter in which the Property was listed. Contrary to

the allegations in the Motion, Mr. Sutton reported that the signs that were placed on the Property had been removed by an unknown party each time he visited the Property. Prior to conversion, the Property was marketed by the Debtor's real estate agent without success and without any accepted offers that the Trustee is aware of. Throughout the transparent marketing, listing, and the 363 sale process, the Debtor had significant opportunity to present any higher offers and, in fact, the Trustee encouraged such higher offers when the Debtor through counsel would elude that there may be another interested party. However, the Debtor failed to present same. Long after the deadline for submitting higher offers and at a continued sale hearing due to the Debtor's objection to the proposed sale of the Property, the Debtor produced a third party with an untimely offer. After the Trustee's investigation which included discussions with counsel for said third party, it was revealed that the Debtor was trying to make a side deal with said third party and subsequently said third party withdrew their untimely offer. On September 26, 2016, this Court entered an initial Order approving the Motion to Sell the Property, which included authorization to pay Mr. Sutton's real estate commissions (Doc. Id. 670), as well as a revised Order on October 7, 2016, which also included the authorization to pay Mr. Sutton's real estate commissions (Doc. Id. 680).

**Allegations Contained in Paragraphs 5 and 7**

10. The allegations contained in Paragraphs 5 and 7 of the Motion relate to matters which are subject to final Orders of this Court (Doc. Ids. 684, 986, and 1014). As with most of the Motion, the allegations contained in Paragraphs 5 and 7 of the Motion are wholly false. Prior to the consummation of the sale of the Property to BTJ Inc., the Trustee communicated with counsel for BTJ, Inc., as well as Robert Pabst, about conducting a public auction of the Ramase Assets which were at the time located at the Property. Mr. Pabst initially agreed to a public auction and requested that the Ramase Assets be removed as soon as possible. In order to accommodate Mr.

Pabst's request, on October 17, 2016, the Trustee filed a Motion to Expand Retention Order of The Hamilton Group, the court-appointed auctioneer in this case (the "Auctioneer"), to sell the Ramase Assets ("Motion to Expand") and an Expedited Motion to sell the Ramase Assets ("Expedited Motion") at public auction to be held on November 19, 2016, stating that all Ramase Assets would be removed by November 30, 2016. (Doc Id. 684). The Debtor filed an Objection to the Motion to Expand and after several hearings would not agree to the sale of the Ramase Assets at public auction by the Auctioneer. Also, despite the representation that he was willing to cooperate with the removal of the Ramase Assets, shortly after the Trustee filed her Expedited Motion, Mr. Pabst took an adverse position to the Trustee's request for a public auction of the Ramase Assets an filed an objection. After the Trustee informed Ms. Heminway and the Debtor through counsel that she could not allow their plan of Ms. Heminway's ex-husband, who to the best of the Trustee's knowledge is not an auctioneer, is an interested party to the Debtor, and would not be able to secure a bond, to sell the Ramase Assets piece-by-piece and turn over the proceeds to the Trustee, the Trustee eventually allowed the Ramase Assets to be moved to the adjoining lot owned by the Debtor and stored by the Debtor as moving and storing the Ramase Assets elsewhere would have been cost prohibitive to the estate due to the volume of the collection and size of individual pieces. This was all coordinated with the assent of the Debtor, through counsel and Ms. Heminway. Since the dispute by the Debtor as to how the Ramase Assets would be sold could not be resolved without further litigation, the Debtor then focused on obtaining financing to compromise the entire case with the Trustee to which the Debtor failed to consummate as set forth in Paragraph 21 infra.

11. The Ramase Assets were sold at the second public auction sale, for which the Trustee's motion was granted by Order of this Court entered on August 28, 2019 (Doc. Id. 986). The Court entered another Order authorizing the employment of the Auctioneer for this sale on July 30, 2019 (Doc. Id. 944), although such an Order was not necessary, and the Auctioneer's fees and

other expenses for this sale were approved by Order of this Court entered January 8, 2020 (Doc. Id. 1014).

12. Further, despite the Debtor's allegations that the Trustee failed to safeguard assets, the Debtor refused over an extended period of time to turn over possession of the remaining assets of the estate and, as a result, the Trustee was unable to obtain insurance coverage despite significant efforts to obtain said coverage. The Trustee also requested insurance information from the Debtor through counsel on multiple occasions to ensure the remaining assets of the subject properties were covered under a policy. The Debtor failed to cooperate with the Trustee and supply such information.

### Allegations Contained in Paragraph 6

The allegations contained in Paragraph 6 of the Motion relate to matters which are subject to final Orders of this Court (Doc. Id. 1014). As set forth in the Amended Interim Application by Auctioneer for Compensation and Reimbursement of Expenses filed on January 3, 2020 (Doc. Id. 1008), the Auctioneer obtained an assessment and valuation of the Ramase wood inventory from Joseph D. ReReisi of Urban Miners, LLC, a known area wood expert. On January 8, 2020, this Court entered an Order approving this expense (Doc. Id. 1014).

### Allegations Contained in Paragraph 8

13. The allegations contained in Paragraph 8 of the Motion relate to matters addressed by this Court at the hearing held on August 27, 2019 (Doc. Id. 984). The Trustee has not taken possession, nor intends to take possession, of any exempt assets and is unsure which instruments necessary for the Debtor's occupation the Debtor refers to in Paragraph 8 of the Motion. As discussed in the August 27, 2019 hearing, the exemption taken for instruments necessary for a debtor's occupation was not linked to any sufficiently described or valued asset and therefore was no asset was properly exempted (Doc. Id. 984, 24:45–25:28).

**Allegations Contained in Paragraphs 9, 10 and 13**

14. The allegations contained in Paragraphs 9, 10, and 13 of the Motion relate to matters which are subject to final Orders of this Court (Doc. Ids. 637, 726, 944, and 1014) and were addressed by this Court in hearings held on August 6, 2019 and August 27, 2019. The Hamilton Group is a qualified auctioneer which has been employed by the court in numerous other matters. This Court approved the application to employ the Auctioneer on July 19, 2016 (Doc. Id. 637). The retention Order was expanded by further Order of this Court on December 14, 2016 (Doc. Id. 726). The Auctioneer was further authorized to continue employment for the second public auction sale by Order of this Court entered July 30, 2019 (Doc. Id. 944), although such an Order was not necessary.

15. Robert Glass is an antiques expert with over 45 years of experience and has conducted thousands of auctions within that time. The 2016 sale brought an excess of the appraisal estimate for the benefit of the estate. The Debtor has not provided evidence which would cause the Trustee to question that Robert Glass or the Auctioneer are unqualified or inexperienced. The Auctioneer has no obligation to consider the valuations of the Debtor or his business associates. As stated in Paragraph 13, supra, the expenses for certain expert valuations, as well as the Auctioneer's fees and other expenses, at the second public auction sale were approved by Order of this Court entered January 8, 2020 (Doc. Id. 1014).

16. Other applications for compensation for the Auctioneer or Robert Glass as appraiser have been granted by Orders of this Court on January 29, 2016 (Doc. Id. 579); February 20, 2016 (Doc. Id. 588); February 14, 2017 (Doc. Id. 767); and March 10, 2017 (Doc. Id. 774). The Trustee's first public auction sale motion was granted by Order of this Court entered on September 26, 2016 (Doc. Id. 673). The Trustee's second public auction sale motion was granted by Order of this Court entered on August 28, 2019 (Doc. Id. 986).

17. In a hearing held on August 6, 2019, during a discussion on the qualifications of the Auctioneer wherein Ms. Heminway brings forth many of the issues raised in the Motion, the Court stated that the Debtor does not have standing to raise these issues and that the Auctioneer has been employed and performing its job as prescribed (Doc. Id. 963, 1:17:06–1:23:31). This was reiterated when Ms. Heminway raised substantially all of the allegations against the Auctioneer contained in the Motion in the hearing held on August 27, 2019 (Doc. Id. 984, 28:28–32:48).

### Allegations Contained in Paragraph 11

18. The allegations contained in Paragraph 11 of the Motion relate to matters which are subject to final Orders of this Court (Doc. Ids. 637, 726, 944, and 1014) and were addressed by this Court at hearings held on August 6, 2019 and August 27, 2019. The Trustee consulted with each of the auction houses suggested by the Debtor and no house was interested in selling all assets of the estate for the terms and conditions imposed by the codes, rules, and laws governing auction sales of a bankruptcy estate. Further, in the hearing held on August 6, 2019, the Court stated that the Trustee is the legal representative of the Estate and the Debtor has no right to force the Trustee to utilize a specific auctioneer or standing to raise the issue (Doc. Id. 963, 1:14:38–1:17:10). The Court further stated at the hearing held on August 27, 2019 when Ms. Heminway again raised this issue that the Trustee does not have to utilize experts raised by the Debtor (Doc. Id. 984, 39:54–40:13).

### Allegations Contained in Paragraph 12

19. The allegations contained in Paragraph 12 of the Motion relate to matters which are subject to final Orders of this Court (Doc. Ids. 637, 726, 944, and 1014). The Trustee and this Court have given the Debtor more than ample opportunity to provide adequate documentation to show any items disputed by the Debtor to be not estate assets and the Debtor failed before prior sales to provide such documentation. In preparation for the third and final sale, the Auctioneer has

provided an itemized list of assets to be sold, which the Debtor through Ms. Heminway has been working off of to provide documentation to the Trustee to show certain of these assets were purchased post-petition or by another party. The Trustee has already released some of these items to the Debtor upon submission of sufficient proof.

### **Allegations Contained in Paragraph 14**

20. The allegations contained in Paragraph 14 of the Motion relate to matters which are subject to final Orders of this Court (Doc. Ids. 799 and 804) and were addressed by this Court at a hearing held on August 6, 2019. The Trustee was in constant communication with counsel for Sachem Capital Partners, the lender through whom the Debtor attempted to secure financing to pay off the estate (the "Lender"), and timely provided said counsel with a payoff statement for the estate for that purpose. That payoff amount was also stated in the Motion to Compromise the Remaining Nonexempt Equity in All Remaining Assets of the Bankruptcy Estate with the Debtor (Doc. Id. 788) (the "Global Compromise Motion"), which was filed before the Debtor's commitment expired and of which the Lender received notice, and which the Court granted (Doc. Id. 799). As stated by the Court in the Show Cause Hearing on August 6, 2019, the Lender was aware of the interest which would accrue daily on the property taxes and lien against the Debtor's property. The Lender informed the Trustee that despite repeated requests the Lender had not received accurate payoffs of the various real estate taxes owed until very late in the final loan approval process and once the substantial balances were revealed the Debtor was unable or unwilling to satisfy the remaining conditions of loan approval. The result that Debtor was unable to secure financing was not due to any delay on the part of the Trustee. Accordingly, on August 10, 2017 the Trustee filed a Notice of the Debtor's Noncompliance with the Order on the Global Compromise Motion (Doc. Id. 804). This matter was discussed extensively at the hearing held on August 6, 2019 (Doc. Id. 963, 47:32–1:11:00)

**Allegations Contained in Paragraph 15**

21. The allegations contained in Paragraph 15 of the Motion relate to matters set forth in Reports of Sale (Doc. Ids. 699, 724, 996, and 1007). As more fully articulated in the Trustee's Objection to Debtor's Second Amended Motion for Specific Accounting from Bankruptcy Trustee filed simultaneously herewith, the Trustee has no obligation to provide an accounting to the Debtor and the Debtor has no standing to compel the Trustee to provide such an accounting. The Trustee has timely filed a report of sale after each public or private sale, which were filed on October 31, 2016 (Doc. Id. 699); December 13, 2016 (Doc. Id. 724); and November 26, 2019 (Doc. Id. 996), which was amended on January 3, 2020 (Doc. Id. 1007).

**Conclusion**

22. The Debtor's lack of cooperation with the Trustee has prolonged the administration of this case, to the detriment of all parties. From the time of conversion, the administration has been contentious, as evidenced by the motions, objections, applications, and pleadings and oral argument and testimony at various hearings, all of which appear on the docket.

23. On July 31, 2019, the Court issued an Order to Appear and Show Cause Why Debtor and/or Any Person Authorized to Act on Behalf of the Debtor Should Not Be Sanctioned for Failure to Comply with Debtor's Duties as Required by the Bankruptcy Code and Rules (Doc. Id. 950). In this Order, the Court states that the Debtor and Ms. Heminway "have failed to comply with the Debtor's duties set forth in the Bankruptcy Code, including, but not limited to, the Debtor's duty to cooperate with the Chapter 7 Trustee as necessary to enable the Chapter 7 Trustee to perform her duties under the Bankruptcy Code and Federal Rules of Bankruptcy Procedure." It further states that the Debtor and Ms. Heminway "are continuing to frustrate, block, stall, impede, hinder, delay, and/or stop the Chapter 7 Trustee from selling estate assets at various locations . . . ." On August 28, 2019, the Court entered a second, substantially similar Order

(Doc. Id. 986).

24. The Trustee filed her Motion to Show Cause in response to the Debtor and his authorized agents' noncompliance with these Orders.

25. The Debtor has not received his discharge to date.

26. 11 U.S.C. §324(a) states, "The court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause." *In re Lundborg* is the leading case in this District on the issue of removal of a trustee. 110 B.R. 106 (Bankr. D.Conn. 1990). The decision sets forth the standard to be used: Code § 324(a) provides that "the court, after notice and a hearing, may remove a trustee . . . . for cause." Cause, which is not defined by the Code, must be determined by courts on an ad hoc basis. *In re Haugen Constr. Serv., Inc.,* 104 Bankr. 233, 240 (Bankr. D. N.D. 1989). Cause has been found to exist, *inter alia,* where the trustee is not disinterested, *In re BH & P, Inc.,* 103 Bankr. 556, 561 (Bankr. D. N.J. 1989); *In re Paolino,* 80 Bankr. 341, 344 (Bankr. E.D. Pa. 1987), and where the trustee fails to perform his or her duties, *Matter of Schoen Enter., Inc.,* 76 Bankr. 203, 206 (Bankr. M.D. Fla. 1987), or unreasonably delays in the performance of those duties. *Matter of Island Amusement, Inc.,* 74 Bankr. 18, 19 (Bankr. D. P.R. 1987); *In re Mira-Pak, Inc.,* 72 Bankr. 430, 431 (Bankr. S.D. Tex. 1987). In general, a party seeking the removal of a trustee must prove that there has been some actual injury or fraud. *In re Acadiana Electrical Serv.,* 66 Bankr. 164, 165 (Bankr. W.D. La. 1986); *United States ex rel. People's Banking Co. v. Derryberry (In re Hartley)*, 50 Bankr. 852, 859 (Bankr. N.D. Ohio 1985). *See also Matter of Freeport Italian Bakery, Inc.,* 340 F.2d 50, 54 (2d Cir. 1965). A trustee should not be removed for mistakes in judgment where that judgment was discretionary and reasonable under the circumstances, *In re Haugen Constr. Serv., Inc.*, supra, 104 Bankr. at 240, and courts should consider the best interests of the estate, rather than those of a single movant-creditor, when determining whether to remove a trustee.

*Baker v. Seeber (In re Baker),* 38 Bankr. 705, 708 (D. Md. 1983); *Gross v. Russo (Matter of Russo),* 18 Bankr. 257, 273 (Bankr. E.D.N.Y. 1982). *Id.*, at 108. The Second Circuit Court of Appeals has stressed the elements of fraud and actual injury to the debtor interests in defining cause. *Dieffenbach v. Haworth (In re Haworth)*, 356 Fed. Appx. 529, 530-531, 2009 U.S. App. LEXIS 27457, *2 (2d Cir. Conn. 2009) and cases cited.

27. The burden of proof is on the moving party to show cause, which must be supported by specific facts, for the removal of a trustee. *In re AFI Holdings, Inc.*, 530 F.3d 832, 845 (9th Cir. 2008). "In general, a party seeking the removal of a trustee must prove that there has been some actual injury or fraud." *In re Lundberg*, 110 B.R. *supra at* 108.

28. Nothing that the Debtor alleges in the Motion or otherwise proves fraud and actual injury to the Estate or any misconduct by the Trustee.

29. The majority of the categories of allegations brought forth by the Debtor are subject to final Orders of this Court and/or have been addressed by the Court on the record.

30. Most importantly, at the Show Cause Hearing, held on August 6, 2019, after a lengthy articulation of the numerous reasons why the Court may issue an order of contempt and sanctions against the Debtor and Ms. Heminway, the Court stated that there were no grounds or standing for such a motion and there is no evidence or information before the Court to support such a motion (Doc. Id. 963, 1:11:32–1:12:11).

31. The Debtor has not set forth any facts to support a basis for removal of the Trustee as the Chapter 7 Trustee of the Debtor's bankruptcy estate.

32. Furthermore, other than a very brief period during the summer of 2019, the Debtor has had counsel of record in this 10.5 year case. Throughout the 5.5 years of the Chapter 7 portion of this case, the Trustee has consistently communicated with Debtor's counsel and successor counsel about all aspects of this proceeding.

33. Based upon the foregoing, the Trustee respectfully requests this Court to sustain the Objection and deny the Debtor's Second Amended Motion to Remove Chapter 7 Bankruptcy Trustee.

**WHEREFORE,** the Trustee, Kara S. Rescia, respectfully requests that this Court to sustain the Trustee's Objection and deny the Debtor's Second Amended Motion to Remove Chapter 7 Bankruptcy Trustee. In the event that the Court determines that an evidentiary hearing should be held the Trustee reserves the right to submit evidence in support of this objection. In the alternative should the Court grant the Debtor's Motion, Kara S. Rescia, Trustee respectfully requests that the removal be limited to the within bankruptcy estate and grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,

/s/ Kara S. Rescia
Kara S. Rescia, Trustee
5104A Bigelow Commons
Enfield, CT 06082
Federal Bar No.: ct18001
Email: kara@ctmalaw.com
Dated: August 31, 2020

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT
# BRIDGEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| HAROLD E. COLE | ) | CASE NO. 10-50091(JAM) |
|     Debtor | ) | |
| | ) | |

## PROPOSED ORDER RE: TRUSTEE'S OBJECTION TO DEBTOR'S SECOND AMENDED MOTION TO REMOVE CHAPTER 7 BANKRUPTCY TRUSTEE

Upon the Trustee's Objection to Debtor's Second Amended Motion to Remove Chapter 7 Bankruptcy Trustee filed by Kara S. Rescia, Trustee, dated August 31, 2020 (Doc. Id. __ hereinafter "Objection"), after notice and hearing, it is hereby:

**ORDERED**: That the Trustee's Objection Debtor's Second Amended Motion to Remove Chapter 7 Bankruptcy Trustee is sustained and the Debtor's Second Amended Motion to Remove Chapter 7 Bankruptcy Trustee is denied.