| | |
|---|---|
| RETURN DATE: | : SUPERIOR COURT |
| HAROLD COLE | : J.D. OF LITCHFIELD |
| VS. | : AT LITCHFIELD |
| KARA S. RESCIA | : FEBRUARY 12, 2021 |

## COMPLAINT

**FIRST COUNT: (Legal Malpractice)**

    1.    On or about February 5, 2015, and at all relevant times mentioned herein, the plaintiff/debtor Harold E. Cole, was an individual residing in the Town of Woodbury, County of Litchfield and State of Connecticut.

    2.    On or about February 5, 2015, and at all relevant times mentioned herein, the defendant Kara S. Rescia, was an attorney duly licensed in the State of Connecticut and engaged in the practice of law in Connecticut.

    3.    On or about February 5, 2015, and at all relevant times mentioned herein, the defendant Kara S. Rescia, was a principal and partner in the Domestic Limited Liability Partnership Rescia & Shear, LLP organized and existing under the laws of the State of Connecticut with a principal place of business located at 5104A Bigelow Commons in the Town of Enfield, County of Hartford and State of Connecticut which was a law firm duly authorized to do business in the state of Connecticut.

    4.    On or about December 31, 2018, and at all relevant times mentioned herein, the defendant Kara S. Rescia, was a principal and shareholder in the Professional Corporation Rescia

Law, PC organized and existing under the laws of the State of Connecticut with a principal place of business located at 5104A Bigelow Commons in the Town of Enfield, County of Hartford and State of Connecticut which was a law firm duly authorized to do business in the state of Connecticut.

5. On January 15, 2010, the plaintiff/debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. On February 5, 2015, the case was converted to a Chapter 7 Bankruptcy action and Kara S. Rescia was duly appointed by the Bankruptcy Court in the United States District Court for the District of Connecticut as the Chapter 7 Trustee and is currently serving in that capacity.

6. On or about February 5, 2015, and at all relevant times mentioned herein, the defendant Kara S. Rescia held herself out as capable and proficient in handling the duties of a Chapter 7 Bankruptcy Trustee for the Bankruptcy Estate of the plaintiff/debtor.

7. On or about February 9, 2015, the defendant took possession of $1,000 listed in plaintiff/debtor's Schedule C – Property claimed as exempt and closed plaintiff/debtor's checking account significantly impairing the plaintiff/debtor's ability to operate his business and support himself.

8. On or about May 8, 2015 defendant chose Tim Dunham Realty as Real Estate Broker for plaintiff/debtor's antiques shop in Wiscasset, ME even though there was no equity in the property and the property was one of the two primary locations of the business the plaintiff/debtor operated to support himself.

9. On or about June 2, 2015 defendant chose Robert Glass Auctions, LLC as appraiser for plaintiff/debtor's inventory and personal collection of high end Early American Antiques despite concerns voiced by the plaintiff/debtor about his lack of experience in this specialty. In addition, Robert Glass's final bill exceeded the price quoted to do the appraisal.

10. On or about June 26, 2015 defendant chose Keller Williams Greater Hartford as Realtor for plaintiff/debtor's properties in Connecticut.

11. On or about May 9, 2016 defendant chose The Hamilton Group, LLC as, Auctioneer for plaintiff/debtor's business inventory. Robert Glass served as the primary auctioneer for this sale which took place on November 12, 2016 and November 13, 2016, and as of the date of this complaint, the above-named auctioneer is in the process of conducting a third auction/sale of the debtor's property. Defendant chose this auctioneer even though:

   a. plaintiff/debtor had identified to defendant serious issues with the Glass appraisal and provided specific examples;

   b. plaintiff/debtor provided an alternative auctioneer, Bruce Gamage Jr., Estate Auctioneer who had appropriate experience with high end Early American Antiques and who, based on his experience and clientele, felt he would achieve three to four times the Glass appraisal amount;

   c. when defendant rejected Bruce Gamage Jr., plaintiff/debtor provided another alternative auctioneer, Julia's who not only had the appropriate experience with high end Early American Antiques but was willing to advance the full amount of the Glass appraisal to the

defendant prior to taking custody of the inventory and remit any additional sums received after their fees directly to the defendant.

12. On or about November 12, 2016 defendant allowed assets which were not part of the bankruptcy estate to be auctioned despite notification by the plaintiff/debtor that they had been taken. The defendant has repeatedly taken items that are not part of the Chapter 7 Bankruptcy case of Harold Cole and has also repeatedly taken items belonging to a non-party to the Bankruptcy action

13. On or about January 19, 2017 defendant approved payment to the Hamilton Group, LLC for $77,208.52 which was more than double their pre-auction estimate of $31,000 and over 36% of gross proceeds when the best galleries selling Early American Antiques were charging 15-21% at this time and whose services far exceeded those provided by the Hamilton Group.

14. During the period which the defendant was the bankruptcy trustee, she sold certain real estate known as 35 Joshua Hill Road, Woodbury, CT.  Defendant:

a. failed to provide information she committed to provide to the plaintiff/debtor through his daughter on or about April 28, 2016 which was requested to enable plaintiff/debtor to find alternative buyers;

b. refused to investigate plaintiff/debtor's concern that property was being sold without posting a sign at the location, publicly advertising or holding a public sale and made false statements regarding the sale; and

c. refused to consider an alternate buyer identified by the plaintiff/debtor, ready and

willing to pay $50,000 more that defendant's buyer which would have nearly doubled the net to the estate bringing it from approximately $65,000 to $115,000;

 d. refused to hold off the closing until valuable inventory and equipment of plaintiff/debtor's business RAMASE could be removed from the property even though both her buyer and the plaintiff/debtor were agreeable to this option;

 e. failed to protect the RAMASE assets even though defendant made her aware that her buyer was claiming he would get the assets on the property for free;

 f. actions resulted in inventory and equipment which could not be moved on time being lost to the plaintiff/debtor's estate.

 15. After failing to protect the Ramase assets the defendant:

 a. on or about December 16, 2016 the defendant proposed to sell the Ramase assets for as little as $12,500 despite a valuation of $740,000 provided by the plaintiff/debtor. To plaintiff/debtor's knowledge defendant did not bring anyone experienced with antique building materials or wood processing equipment in to provide an alternate appraisal.

 b. did not support the plaintiff/debtor in negotiating a lease with her buyer to allow plaintiff/debtor to remove the RAMASE assets from the property;

 c. restricted the move the RAMASE inventory and equipment to the adjoining unimproved lot where it could not be protected from the elements;

 d. refused to allow plaintiff/debtor to sell any of the assets even with one hundred percent of the proceeds going directly to the defendant;

 e. left the RAMASE assets on the adjacent property for over two years without

doing anything to protect them from exposure to the elements, allowing them to degrade to a fraction of their value prior to selling them on or about October 25, 2019.

16. On or about October 26, 2019, defendant employed the Hamilton Group to liquidate plaintiff/debtor's personal collection of antiques, collection of decoys, antique building materials and wood processing equipment despite:

    a. the fact that in the first sale they displayed a lack of knowledge of high end Early American Antiques—a large portion of plaintiff/debtor's inventory—misrepresenting age and value in their descriptions and by their estimates;

    b. plaintiff/debtor's affidavit dated December 6, 2016 advising the defendant that in the sale of his business inventory the Hamilton Group had displayed deficiencies, including but not limited to, a lack of knowledge in the sale of early American furniture and accessories, incorrectly identifying items, failing to research and establish current market value and using pre-auction estimates that cause items to sell well below market value;

    c. the Hamilton Group's indication that they would need to bring in an expert to assess the decoy collection and plaintiff/debtor's request to have a gallery specializing in decoys sell them;

    d. the Hamilton Group verbally bring into question the origin of a piece(s) during the prior sale of the antiques inventory;

    e. the Hamilton Group's failure to produce a sales catalog with high quality photographs, spaces between the words in the descriptions and appropriate punctuation;

    f. the Hamilton Group exceeding their quoted price to appraise the antiques

inventory;

    g.  the Hamilton Group substantially exceeding their quoted price to bring the antiques inventory to auction;

    h.  the Hamilton Group charged fees in excess of other galleries recommended by plaintiff/debtor for services far below industry standard.

    17.    The Hamilton Group submitted invoices which exceeded their quote price on three separate occasions.

    18.    Defendant liquidated one hundred percent of "Tools, instruments necessary for debtor's occupation," which were included "in their entirety" on his Schedule C – Property Claimed as Exempt, and thus were not part of the bankruptcy estate even though plaintiff/debtor made her aware of their exempt status.

    19.    On or about January 9, 2017, plaintiff/debtor obtained funding approval from Sachem Capital Partners to settle his bankruptcy estate. Although the defendant had represented through plaintiff/debtor's counsel on or about January 3, 2017 that $180,000 was the amount needed to close the bankruptcy, after the lending commitment was received, on or about March 15, 2017, the defendant raised the amount necessary to close the bankruptcy to $220,000.

    20.    Plaintiff/debtor was unable to close his bankruptcy estate with this lender because:

    a.  defendant refused to provide a court approved settlement statement to the lender to assure the real estate necessary to collateralize the loan would transfer simultaneously at closing;

b. the only written statement provided by the defendant on or about March 15, 2017 was marked up by hand, not court approved and increased the settlement amount by $40,000;

c. defendant refused to provide needed documentation for a period of approximately five months. The increased taxes and interest when added to the defendant's $40,000 increase caused borrowing needs to exceed the collateral resulting in the lender being forced to withdraw their commitment.

21. Throughout Chapter 7, the plaintiff/debtor has had difficulty obtaining statements reflecting the financial impacts of the defendant actions on his bankruptcy estate and reflecting a current balance. Defendant has refused to provide a statement to current counsel despite repeated requests for nearly one year.

22. Throughout the Chapter 7, plaintiff/debtor has observed the defendant including inaccurate information in her expert's submissions, stitching together disparate facts to create impressions that are not accurate and presenting inadmissible information such as hearsay thereby prejudicing the Court against the plaintiff/debtor.

23. The defendant's failure to clearly document the assets of the bankruptcy estate at any time during her term as Trustee, has led to confusion as to the identity of the bankruptcy estate assets and has now put plaintiff/debtor's post Chapter 7 assets at risk.

24. At the time of his Chapter 11 filing, plaintiff/debtor owed between $230,000 and $240,000. At conversion, plaintiff/debtor's pre-Chapter 7 legal fees were listed at approximately $100,000 for a total of $340,000. Plaintiff/debtor sold real estate pre-Chapter 7 that netted

approximately $71,500 and paid cash sums post Chapter 7 of $48,500 for a total of $120,000. $340,000 in debts less $120,000 in payments would suggest a balance due of $220,000. Defendant received roughly $10,500 from the plaintiff/debtor's bank account, sold real estate for $250,000 and the plaintiff/debtor's business inventory, equipment and items from his personal collection for approximately $360,000 for a total of $620,500. These funds exceed the $220,000 by over $400,000 and when combined with the $100,000 legal fees suggest legal and administrative fees are over twice what plaintiff/debtor owed.

25. In her role as Trustee of the Bankruptcy estate, defendant Kara S. Rescia and her law firm failed to exercise the degree of care, skill and diligence normally possessed by a licensed attorney specializing in the field of Bankruptcy law in that they:

a. failed to establish a competent set of plans and procedures to properly identify, photograph and document the assets of the plaintiff/debtors' estate at the outset of her appointment as the Chapter 7 Bankruptcy trustee;

b. failed to establish a competent set of plans and procedures to properly identify, photograph, document and delineate those assets of the plaintiff/debtor that were pre-chapter 7 assets of the estate and post-chapter 7 assets of the estate;

c. failed to properly identify, photograph or document any assets of the plaintiff/debtor's bankruptcy estate at the outset of her appointment as the Chapter 7 Bankruptcy Trustee;

d. failed to establish a competent set of plans and procedures to secure and

safeguard the assets of the plaintiff /debtor's estate at the outset of her appointment as the Chapter 7 Bankruptcy Trustee;

     e.  failed to properly safeguard and secure the assets of the bankruptcy estate;

     f.  failed to maintain an accurate accounting of the expenses, assets, and proceeds from the liquidation of the plaintiff/debtor's bankruptcy estate;

     g.  failed, neglected and refused to provide accurate financial statements and data to allow the plaintiff/debtor to extricate himself from a Chapter 7 liquidation of his estate;

     h.  failed to perform an analysis at the outset of her appointment as the Chapter 7 Bankruptcy Trustee to determine if the plaintiff/debtor's estate was an excess or surplus estate, however, on or about June 5, 2015 reported to the court, "The Trustee anticipates that there will be a dividend to creditors.  However, it is unclear whether the estate will yield a surplus to the Debtor," without appraising or quantifying estate assets;

     i.  failed to provide financial statements of the bankruptcy estate that were competent, complete and accurate;

     j.  only provided two financial statements in a period of five years which were inaccurate, incomplete and inconsistent;

     k.  neglected and failed to properly screen the qualifications of vendors selected by her to assist in the liquidation of the estate before hiring them to assist in the liquidation process;

     l.  neglected and failed to properly supervise the vendors/auctioneers selected by

her to properly ensure that the vendors/auctioneers were competently performing their assigned tasks and were protecting assets of the estate;

m.  repeatedly allowed significant cost overruns by the vendors/suppliers/auctioneers selected by her to assist in the liquidation of the Chapter 7 Bankruptcy estate even when such cost over runs were questioned by the US Trustee's office;

n.  as the bankruptcy trustee, repeatedly entered or supported transactions not in the best interest of the bankruptcy estate;

o.  continued to use a vendor even though they exhibited a demonstrable lack of expertise in their chosen field;

p.  failed to obtain the highest and best value for the plaintiff/debtor's assets even though she was under a duty to do so;

q.  repeatedly ignored issues identified by the plaintiff/debtor in relation to negative actions taken by vendors/suppliers/auctioneers that were having a deleterious effect on the value of the plaintiff/debtor's real estate assets and other assets;

r.  refused to consider alternative auctioneers who were less expensive and more qualified in the field of early American Antiques than the auctioneer selected;

s.  liquidated assets of the estate with the knowledge that said assets were not part of the bankruptcy estate;

t.  repeatedly failed, neglected and refuse to meet with the plaintiff/debtor to review documentation of assets not part of the Chapter 7 Bankruptcy Estate;

u.  included inaccurate or misleading information to the Bankruptcy Court to be

used in the decision-making process.

26. The defendant's negligence in one or more of the was a substantial factor in causing the plaintiff/debtor to suffer economic harm and losses, all to his great financial detriment.

27. As a further result of the negligence of the defendants as the plaintiff/debtor has suffered emotional stress.

**SECOND COUNT: (Breach of Fiduciary Duty)**

1-27. Paragraphs 1 through 27, inclusive, of the First Count are hereby incorporated and made paragraphs 1 through 27 inclusive of the Second Count, as if fully set forth herein.

28. The Chapter 7 Bankruptcy Trustee owed a fiduciary duty to the plaintiff/debtor and his estate.

29. The Chapter 7 Bankruptcy Trustee breached said fiduciary duty to the plaintiff as more fully set forth herein above.

| | |
|---|---|
| RETURN DATE: | : SUPERIOR COURT |
| HAROLD COLE | : J.D. OF LITCHFIELD |
| VS. | : AT LITCHFIELD |
| KARA S. RESCIA | : FEBRUARY 11, 2021 |

## STATEMENT RE: AMOUNT IN DEMAND

The amount, legal interest or property in demand in this case is greater than FIFTEEN THOUSAND ($15,000.00) DOLLARS, exclusive of interests and costs.

        THE PLAINTIFF/DEBTOR
        HAROLD COLE,


        BY: _____
        Neal P. Rogan
        Kelly B. Bloom
        Law Offices of Neal Rogan, LLC
        315 Post Road West
        Westport, CT 06880
        (t) 203-341-8783
        (f) 203-341-8560
        neal@nealrogan.com
        Juris #: 432680