| RETURN DATE: | : | SUPERIOR COURT |
| HAROLD COLE | : | J.D. OF LITCHFIELD |
| VS. | : | AT LITCHFIELD |
| KARA S. RESCIA | : | APRIL 5, 2021 |

## COMPLAINT

**FIRST COUNT: (Negligence)**

1.      On or about February 5, 2015, and at all relevant times mentioned herein, the plaintiff, Harold E. Cole, was an individual residing in the Town of Woodbury, County of Litchfield and State of Connecticut.

2.      On or about February 5, 2015, and at all relevant times mentioned herein, the defendant Kara S. Rescia, was an attorney duly licensed in the State of Connecticut and engaged in the practice of law in the State of Connecticut.

3.      On or about February 5, 2015, and at all relevant times mentioned herein, the defendant Kara S. Rescia, was a principal and partner in the Domestic Limited Liability Partnership Rescia & Shear, LLP, organized and existing under the laws of the State of Connecticut with a principal place of business located at 5104A Bigelow Commons in the Town of Enfield, County of Hartford and State of Connecticut, which was a law firm duly authorized to do business in the State of Connecticut.

4.      On or about December 31, 2018, and at all relevant times mentioned herein, the defendant Kara S. Rescia, was a principal and shareholder in the professional corporation Rescia

Law, PC organized and existing under the laws of the State of Connecticut with a principal place of business located at 5104A Bigelow Commons in the Town of Enfield, County of Hartford and State of Connecticut which was a law firm duly authorized to do business in the State of Connecticut.

5.       On January 15, 2010, the plaintiff filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.  On February 5, 2015, the case was converted to a Chapter 7 Bankruptcy action and Kara S. Rescia was duly appointed by the Bankruptcy Court in the United States District Court for the District of Connecticut as the Chapter 7 Trustee and is currently serving in that capacity.

6.       On or about February 5, 2015, and at all relevant times mentioned herein, the defendant Kara S. Rescia held herself out as capable and proficient in handling the duties of a Chapter 7 Bankruptcy Trustee for the Bankruptcy Estate of the plaintiff.

7.       The defendant, Kara Rescia, in her capacity as Chapter 7 Bankruptcy Trustee was negligent in one or more of the following ways:

a.   On or about February 9, 2015, the defendant, Kara Rescia, took possession of $1,000 listed in plaintiff's Schedule C – Property claimed as exempt and closed plaintiff's checking account significantly impairing the plaintiff's ability to operate his business and support himself.  Said actions were outside the scope of the authority of the defendant.

b.   On or about May 8, 2015 defendant chose Tim Dunham Realty as Real Estate

2

Broker for plaintiff's antiques shop in Wiscasset, ME even though there was no equity in the property and the property was one of the two primary locations of the business the plaintiff operated to support himself.

8.    On or about May 9, 2016, the defendant, Kara Rescia, chose The Hamilton Group, LLC as Auctioneer for plaintiff's business inventory.  Robert Glass of the Hamilton Group, LLC served as the primary auctioneer for three sales which took place on November 12, 2016, November 13, 2016 and February 13, 2021.  Said actions by the defendant were negligent in one or more of the following ways:

a.    The defendant, Kara Rescia, negligently chose this auctioneer even though plaintiff had identified to the defendant serious issues with the Glass appraisal prior to the commencement of any of the three auctions and provided specific examples.

b.    The defendant, Kara Rescia, chose this auctioneer even though the plaintiff provided an alternative auctioneer, Bruce Gamage Jr., Estate Auctioneer who had appropriate experience with high end Early American Antiques and who, based on his experience and clientele, felt he would achieve three to four times the Glass appraisal amount.  This information was provided to the defendant prior to the commencement of any of the three auctions.

c.    The defendant rejected Bruce Gamage Jr.  Thereafter the plaintiff provided Another, alternative auctioneer, Julia's, who not only had the appropriate experience with high end Early American Antiques but was willing to advance the full amount of the Glass appraisal to the defendant prior to taking custody of the inventory and remit any additional sums received after their fees directly to the defendant.

d.   On or about June 2, 2015 defendant chose Robert Glass Auctions, LLC as appraiser for plaintiff's inventory and personal collection of high end Early American Antiques despite concerns voiced by the plaintiff about his lack of experience in this specialty.

e.   The defendant, Kara Rescia, affirmatively sold property through auction which were not properly part of the Chapter 7 Bankruptcy Estate.

f.   The defendant, Kara Rescia, also sold property belonging to Bettina Kranin, which property was not part of the Chapter 7 Bankruptcy Estate.

g.   On or about November 12, 2016, the defendant allowed assets which were not part of the bankruptcy estate to be auctioned despite notification by the plaintiff that they had been taken. The defendant has repeatedly taken items that are not part of the Chapter 7 Bankruptcy case of Harold Cole and has also repeatedly taken items belonging to a non-party to the Bankruptcy action.

h.   On or about January 19, 2017 defendant approved payment to the Hamilton Group, LLC for $77,208.52 which was more than double their pre-auction estimate of $31,000 and over 36% of gross proceeds when the best galleries selling Early American Antiques were charging 15-21% at this time and whose services far exceeded those provided by the Hamilton Group.

i.   On or about October 26, 2019, the defendant, Kara Rescia, employed the Hamilton Group to liquidate the plaintiff's personal collection of antiques, collection of decoys, antique building materials and wood processing equipment despite (a) the fact that in the first sale they displayed a lack of knowledge of high end Early American Antiques, a large portion of

plaintiff's inventory, misrepresenting age and value in their descriptions and by their estimates; (b) plaintiff's affidavit dated December 6, 2016 advising the defendant that in the sale of his business inventory the Hamilton Group had displayed deficiencies, including but not limited to, a lack of knowledge in the sale of early American furniture and accessories, incorrectly identifying items, failing to research and establish current market value and using pre-auction estimates that cause items to sell well below market value; (c) the Hamilton Group's indication that they would need to bring in an expert to assess the decoy collection and plaintiff's request to have a gallery specializing in decoys sell them; (d) the Hamilton Group verbally bring into question the origin of a piece(s) during the prior sale of the antiques inventory; (e) the Hamilton Group's failure to produce a sales catalog with high quality photographs, spaces between the words in the descriptions and appropriate punctuation; (f) the Hamilton Group exceeding their quoted price to appraise the antiques inventory; (g) the Hamilton Group substantially exceeding their quoted price to bring the antiques inventory to auction; and (h)the Hamilton Group charged fees in excess of other galleries recommended by plaintiff for services far below industry standard.

j.   The Hamilton Group submitted invoices which exceeded their quote price on three separate occasions.

k.   Defendant liquidated one hundred percent of "Tools, instruments necessary for debtor's occupation," which were included "in their entirety" on his Schedule C – Property Claimed as Exempt, and thus were not part of the bankruptcy estate even though plaintiff made her aware of their exempt status.

9.    During the period in which the defendant, Kara Rescia, was the Bankruptcy Trustee, she sold certain real estate known as 35 Joshua Hill Road, Woodbury, CT. The defendant was negligent in the sale of said real estate in one or more of the following ways:

a.   In that she failed to provide information she committed to provide to the Plaintiff through his daughter on or about April 28, 2016 which was requested to enable plaintiff to find alternative buyers;

b.   In that she refused to investigate plaintiff's concern that property was being sold without posting a sign at the location, publicly advertising or holding a public sale and made false statements regarding the sale; and

c.   In that she refused to consider an alternate buyer identified by the plaintiff, ready and willing to pay $50,000 more that defendant's buyer which would have nearly doubled the net to the estate bringing it from approximately $65,000 to $115,000;

d.   In that she refused to hold off the closing until valuable inventory and equipment of plaintiff's business RAMASE could be removed from the property even though both her buyer and the plaintiff was agreeable to this option;

e.   In that she failed to protect the RAMASE assets even though defendant made her aware that her buyer was claiming he would get the assets on the property for free;

f.   In that her actions resulted in inventory and equipment which could not be moved on time being lost to the plaintiff's estate.

10.    After failing to protect the Ramase assets the defendant, Kara Rescia, was negligent in one or more of the following ways:

     a. In that on or about December 16, 2016 the defendant proposed to sell the Ramase assets for as little as $12,500 despite a valuation of $740,000 provided by the plaintiff. To plaintiff's knowledge defendant did not bring anyone experienced with antique building materials or wood processing equipment in to provide an alternate appraisal.

     b. In that she did not support the plaintiff in negotiating a lease with her buyer to Allow plaintiff to remove the RAMASE assets from the property;

     c. In that she restricted the move the RAMASE inventory and equipment to the adjoining unimproved lot where it could not be protected from the elements;

     d. In that she refused to allow plaintiff to sell any of the assets even with one Hundred percent of the proceeds going directly to the defendant;

     e. In that she left the RAMASE assets on the adjacent property for over two years without doing anything to protect them from exposure to the elements, allowing them to degrade to a fraction of their value prior to selling them on or about October 25, 2019.

11.    On or about January 9, 2017, plaintiff obtained funding approval from Sachem Capital Partners to settle his bankruptcy estate. Although the defendant had represented through plaintiff's counsel on or about January 3, 2017 that $180,000 was the amount needed to close the bankruptcy, after the lending commitment was received, on or about March 15, 2017, the defendant raised the amount necessary to close the bankruptcy to $220,000.

12.    Plaintiff was unable to close his bankruptcy estate with this lender due to the negligence of the defendant, Kara Rescia, in one or more of the following ways:

     a. defendant refused to provide a court approved settlement statement to the

lender to assure the real estate necessary to collateralize the loan would transfer simultaneously at closing;

b.  the only written statement provided by the defendant on or about March 15, 2017 was marked up by hand, not court approved and increased the settlement amount by $40,000;

c.  defendant refused to provide needed documentation for a period of approximately five months.  The increased taxes and interest when added to the defendant's $40,000 increase caused borrowing needs to exceed the collateral resulting in the lender being forced to withdraw their commitment.

13.    Throughout the Chapter 7 Bankruptcy proceeding, the plaintiff has had difficulty obtaining statements reflecting the financial impacts of the defendant actions on his bankruptcy estate and reflecting a current balance.  The defendant has refused to provide a statement to current counsel despite repeated requests for nearly one year.

14.    Throughout the Chapter 7 Bankruptcy proceeding, the plaintiff has observed the defendant including inaccurate information in her expert's submissions, stitching together disparate facts to create impressions that are not accurate and presenting inadmissible information such as hearsay thereby prejudicing the Court against the plaintiff.

15.    The defendant's failure to clearly document the assets of the bankruptcy estate at any time during her term as Trustee, has led to confusion as to the identity of the bankruptcy estate assets and has now put plaintiff's post Chapter 7 assets at risk.

16.    At the time of his Chapter 11 filing, plaintiff owed between $230,000 and
$240,000.  At conversion, plaintiff's pre-Chapter 7 legal fees were listed at approximately
$100,000 for a total of $340,000.  Plaintiff sold real estate pre-Chapter 7 that netted
approximately $71,500 and paid cash sums post Chapter 7 of $48,500 for a total of $120,000.
$340,000 in debts less $120,000 in payments would suggest a balance due of $220,000.
Defendant received roughly $10,500 from the plaintiff's bank account, sold real estate for
$250,000 and the plaintiff's business inventory, equipment and items from his personal
collection for approximately $360,000 for a total of $620,500.  These funds exceed the $220,000
by over $400,000 and when combined with the $100,000 legal fees suggest legal and
administrative fees are over twice what plaintiff owed.

17.    In her role as Trustee of the Bankruptcy estate, the defendant, Kara Rescia, failed
to exercise the degree of care, skill and diligence normally possessed by a licensed attorney
specializing in the field of Bankruptcy law in that they:

a.  failed to establish a competent set of plans and procedures to properly
identify, photograph and document the assets of the plaintiff's estate at the outset of her
appointment as the Chapter 7 Bankruptcy trustee;

b.  failed to establish a competent set of plans and procedures to properly
identify, photograph, document and delineate those assets of the plaintiff that were pre-chapter 7
assets of the estate and post-chapter 7 assets of the estate;

c.  failed to properly identify, photograph or document any assets of the

plaintiff's bankruptcy estate at the outset of her appointment as the Chapter 7 Bankruptcy Trustee;

    d.  failed to establish a competent set of plans and procedures to secure and safeguard the assets of the plaintiff's estate at the outset of her appointment as the Chapter 7 Bankruptcy Trustee;

    e.  failed to properly safeguard and secure the assets of the bankruptcy estate;

    f.  failed to maintain an accurate accounting of the expenses, assets, and proceeds from the liquidation of the plaintiff's bankruptcy estate;

    g.  failed, neglected and refused to provide accurate financial statements and data to allow the plaintiff to extricate himself from a Chapter 7 liquidation of his estate;

    h.  failed to perform an analysis at the outset of her appointment as the Chapter 7 Bankruptcy Trustee to determine if the plaintiff's estate was an excess or surplus estate, however, on or about June 5, 2015 reported to the court, "The Trustee anticipates that there will be a dividend to creditors. However, it is unclear whether the estate will yield a surplus to the Debtor," without appraising or quantifying estate assets;

    i.  failed to provide financial statements of the bankruptcy estate that were competent, complete and accurate;

    j.  only provided two financial statements in a period of five years which were inaccurate, incomplete and inconsistent;

    k.  neglected and failed to properly screen the qualifications of vendors selected

by her to assist in the liquidation of the estate before hiring them to assist in the liquidation
process;

l.   neglected and failed to properly supervise the vendors/auctioneers selected by
her to properly ensure that the vendors/auctioneers were competently performing their assigned
tasks and were protecting assets of the estate;

m.  repeatedly allowed significant cost overruns by the
vendors/suppliers/auctioneers selected by her to assist in the liquidation of the Chapter 7
Bankruptcy estate even when such cost over runs were questioned by the US Trustee's office;

n.   as the bankruptcy trustee, repeatedly entered or supported transactions not in
the best interest of the bankruptcy estate;

o.   continued to use a vendor even though they exhibited a demonstrable lack of
expertise in their chosen field;

p.   failed to obtain the highest and best value for the plaintiff's assets even
though she was under a duty to do so;

q.   repeatedly ignored issues identified by the plaintiff in relation to
negative actions taken by vendors/suppliers/auctioneers that were having a deleterious effect on
the value of the plaintiff's real estate assets and other assets;

r.   refused to consider alternative auctioneers who were less expensive and more
qualified in the field of early American Antiques than the auctioneer selected;

s.   liquidated assets of the estate with the knowledge that said assets were not
part of the bankruptcy estate;

11

  t. repeatedly failed, neglected and refuse to meet with the plaintiff to
review documentation of assets not part of the Chapter 7 Bankruptcy Estate;

  u. included inaccurate or misleading information to the Bankruptcy Court to be
used in the decision-making process.

  18. The defendant's negligence as herein above described was a substantial factor in
causing the plaintiff to suffer economic harm and losses, all to his great financial detriment.

  19. As a further result of the negligence of the defendant as aforesaid, the plaintiff has
suffered emotional stress.

**SECOND COUNT: (*Ultra Vires Acts* – Exception to the "Barton Rule")**

  1-19. Paragraphs 1 through 19, inclusive, of the First Count are hereby incorporated and
made paragraphs 1 through 19 inclusive of the Second Count, as if fully set forth herein.

  20. Throughout the course of the defendant's administration of the Chapter 7
Bankruptcy action, the defendant has committed numerous *ultra vires acts*, including:

  a. Repeatedly selling through auction property that was not part of the Chapter 7
Bankruptcy Estate of the plaintiff.

  b. Sold or liquidated property of the Chapter 7 Bankruptcy Estate that was
subject to exemption.

  c. Repeatedly sold through auction property of a non-party (Bettina Kranin) to
the Chapter 7 Bankruptcy Estate, who had an ownership in property mistakenly identified by the
Chapter 9 Bankruptcy Trustee as being property of the Chapter 7 Bankruptcy Estate.

  d. Refused to except proof submitted by both the plaintiff and the non-party,

Bettina Kranin, as to ownership of certain identified assets.

      e.  Repeatedly refused to meet with the plaintiff and/or his representatives to review the proofs established by the plaintiff and the non-party establishing said items were improperly included in the Chapter 7 Bankruptcy Estate.

21.    As a result of the acts of the defendant as herein above described, the plaintiff has suffered significant financial damage and loss all to his great financial detriment.

**THIRD COUNT: (Breach of Fiduciary Duty)**

1-21.  Paragraphs 1 through 21, inclusive, of the Second Count are hereby incorporated and made paragraphs 1 through 21 inclusive of the Third Count, as if fully set forth herein.

22.    The Chapter 7 Bankruptcy Trustee owed a fiduciary duty to the plaintiff/debtor and his estate.

23.    The Chapter 7 Bankruptcy Trustee breached said fiduciary duty to the plaintiff as more fully set forth herein above.

| | | |
|---|---|---|
| RETURN DATE:  MAY 4, 2021 | : | SUPERIOR COURT |
| HAROLD COLE | : | J.D. OF LITCHFIELD |
| VS. | : | AT LITCHFIELD |
| KARA S. RESCIA | : | APRIL 5, 2021 |

## STATEMENT RE: AMOUNT IN DEMAND

The amount, legal interest or property in demand in this case is greater than FIFTEEN

THOUSAND ($15,000.00) DOLLARS, exclusive of interests and costs.

THE PLAINTIFF
HAROLD COLE,


BY: _____

Neal P. Rogan
Kelly B. Bloom
Law Offices of Neal Rogan, LLC
315 Post Road West
Westport, CT 06880
(t) 203-341-8783
(f) 203-341-8560
neal@nealrogan.com
Juris #: 432680